**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SEAN KILLEEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  25 C 10229 |
| | ) | |
| THOMAS DART, in his official capacity as | ) | Judge Rebecca R. Pallmeyer |
| Cook County Sheriff; COOK COUNTY, | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sean Killeen is a former corrections officer at the Cook County Sheriff's Office.  In April 2017, he suffered a back injury while responding to an altercation between inmates.  He took a leave of absence to recover, and returned to work in August 2018.  To accommodate his injury, Defendants assigned him to work in a unit of the Cook County Jail that posed a less strenuous physical challenge.  Six years later, however, things changed.  He was abruptly removed from his position, ordered to submit updated ADA paperwork, and placed on unpaid leave.  Roughly six months later, after Defendants had not yet assigned him to a new position, Mr. Killeen resigned. He subsequently brought this employment-discrimination lawsuit, alleging that Defendants' actions constituted disability discrimination in violation of the Americans with Disabilities Act, the Rehabilitation Act, and the Illinois Human Rights Act.  Defendants have moved to dismiss Plaintiff's retaliation claim.  That motion is denied.

## BACKGROUND

The facts laid out below are taken from Plaintiff's First Amended Complaint [14] ("FAC"), which the court accepts as true at the pleading stage.  *See Sykes v. Cook Cnty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 739–40 (7th Cir. 2016).

Plaintiff Sean Killeen is a former Sheriff's Deputy at the Cook County Sheriff's Office.  (FAC [14] ¶ 4.)  He began work with the County in June 2015 as a corrections officer.  (*Id.* ¶ 9.)  On

April 16, 2017, Plaintiff suffered a back injury at work "while responding to an altercation between inmates." (*Id.* ¶ 10.) This back injury "permanently and significantly" made it difficult for him to walk, lift objects, and perform certain kinds of manual labor. (*Id.* ¶ 12.) For several months, he continued working "on-and-off" in "light duty positions" with Cook County, but by September 21, 2017, he took a medical leave of absence on the advice of his physician. (*Id.* ¶¶ 11–14.) He filed a workers' compensation claim at the same time (*id.* ¶ 15), which Defendants contested (*id.* ¶ 18). Several years later, on May 17, 2022, "an arbitrator with the Illinois Workers' Compensation Commission ruled in Plaintiff's favor, finding that Plaintiff had suffered a 'permanent partial disability.'" (*Id.* ¶ 23.)

In the meantime, after undergoing therapy for his injury, he returned to work on August 23, 2018. He "was placed in a permanent position as a correctional officer in the psychiatric division of the Cook County jail." (*Id.* ¶ 17.) Because this position would "accommodate [] his restrictions" permanently, he was advised by Defendants—it is not clear exactly whom—that he no longer needed to submit ADA accommodations paperwork or update Defendants in any other way as to his injuries. (*Id.* ¶¶ 18–21.) He continued working in this position at the psychiatric unit for several years without any further inquiry "from Defendant as to his medical condition and/or accommodations." (*Id.* ¶ 22.)

Almost six years later, Plaintiff was suddenly removed from his position. On October 3, 2024, Defendants informed Plaintiff that he was being removed from the psychiatric position "as a result of his disability," and would be placed on leave. (*Id.* ¶¶ 25, 30.) Plaintiff's allegations make no mention of any changes in his physical condition that necessitated removal from the position he had held, and does not otherwise refer to reasons for the change. For his part, Plaintiff alleges that he was "stunned" by the decision after having been steadily employed in the psychiatric unit for several years. (*Id.* ¶ 28.) He alleges that Defendants gave him three options: (1) "provide medical proof of his ability to work full-time in an alternative position without medical restriction"; (2) "file ADA paperwork to start the process of finding a different position that could

2

accommodate his restrictions"; or (3) "file for disability" and cease working. (*Id.* ¶ 26.) Plaintiff chose option 2, and provided updated "ADA paperwork to start the process of finding a different position that could accommodate his restrictions."[1] (*Id.* ¶¶ 26,28.) In response, Defendants informed Plaintiff that it could take "six months" to match him in a position that adequately accommodated his disability, and that he would have to use his vacation and sick time if he wanted to be paid. (*Id.* ¶¶ 27, 30.) Plaintiff claims that he "expressed to Defendant[s] his objection to being discriminated against on the basis of his disability," and "informed Defendant[s] . . . that Defendant[s'] conduct violated federal disability law." (*Id.* ¶¶ 37, 38.)

By January 2025, Defendants had still not located a position for Plaintiff. As he had "exhausted most of his benefit time," Plaintiff was allegedly forced to go on unpaid leave and filed a claim for unemployment benefits. (*Id.* ¶¶ 31, 32.) Defendants contested the unemployment application, citing "misconduct" (not further described in the complaint) and Plaintiff's "unavailability to work," accusations that Plaintiff now attacks as false. (*Id.* ¶ 32.) The state administrative law judge later found in his favor, and awarded Plaintiff full unemployment benefits. (*Id.* ¶ 35.) For unclear reasons, Defendants then informed Plaintiff that he was forbidden from applying for any open positions "for new county jobs made available via an upcoming county wide job bidding process." (*Id.* ¶ 36.) By April 2025, despite multiple attempts by Plaintiff "for updates on his status," and "repeated requests to be placed into another position," Defendants had still not located a position for him or called him back to work. (*Id.* ¶¶ 39, 41.) Plaintiff alleges that positions were available—including the psychiatric position he previously served in—but Defendants still inexplicably removed him from that position and failed to offer a replacement. (*Id.* ¶¶ 39–40, 45, 49.) Plaintiff alleges that Defendants' unexplained failure to place him in a position was due, in part, to his prior complaints about the discriminatory nature of Defendants' actions. (*Id.* ¶ 49.)

---

[1] Plaintiff does not specifically state what "paperwork" he submitted.

3

On April 17, 2025, Plaintiff resigned, not by choice, but because he saw no other option following the months without pay and "Defendant's discriminatory and retaliatory conduct." (*Id.* ¶¶ 42–43.) He began "drawing money out of his pension while he searched for alternative employment." (*Id.* ¶ 42.) On April 25, 2025, he filed a *pro se* charge with the Equal Employment Opportunity Commission ("EEOC") alleging that he was "discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disability Act of 1990, as amended." (EEOC Charge [17-1] at 2–3; Opp'n [21] at 4 (explaining that this charge was *pro se*).) On August 27, 2025, he initiated this lawsuit.[2]

In his First Amended Complaint, filed through counsel in December 2025, Plaintiff brings nine claims: ADA discrimination (Count I), ADA retaliation (Count II), Rehabilitation Act discrimination (Count III), Rehabilitation Act retaliation (Count IV), Illinois Human Rights Act discrimination (Count V), Illinois Human Rights Act retaliation (Count VI), Illinois-law negligence (Count VII), Illinois-law breach of contract (Count VIII), and Illinois law indemnification (Count IX). Defendants have moved to dismiss several of these counts, including all retaliation claims (Counts III, IV, and VI), as well as the state law negligence and breach of contract claims. (*See generally* FAC [14].) The motion was briefed by the parties, and was the subject of oral argument held on April 16, 2026. The court orally dismissed the negligence and breach of contract claims (*see* Minute Order [26]), and took the motion under advisement with respect to the retaliation claims.

---

[2] A copy of Plaintiff's EEOC charge was attached to Defendants' motion to dismiss, but a copy of his right to sue letter is not in the record. Because Defendants do not challenge this lawsuit as untimely, the court assumes for the purposes of this motion that this lawsuit is not barred by the statute of limitations. *See Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (explaining that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses").

**DISCUSSION**

**I.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of a complaint—not its merits.  To survive, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bowlin v. Bd. of Directors, Judah Christian Sch.*, 167 F.4th 469, 474–75 (7th Cir. 2026) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, the complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Wickstrom v. Air Line Pilots Ass'n, Int'l*, 156 F.4th 835, 841–42 (7th Cir. 2025) (quoting *Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 447 (7th Cir. 2023)).  In assessing the sufficiency of the complaint, the court assumes the truth of the facts alleged, and draws all reasonable inferences in the non-movant's favor.  *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020)

**II.     Analysis**

Defendants have not challenged the sufficiency of Plaintiff's allegations that he was the victim of discrimination in violation of the Americans with Disabilities Act, Rehabilitation Act, and the Illinois Human Rights Act ("IHRA").  They do argue that the court should dismiss Plaintiff's retaliation claims.  (Mot. [17] at 4.)  Because the elements of all three statutes are essentially identical, the court considers all three claims in tandem.  *See Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) ("Illinois courts analyze IHRA claims under a framework that is practically indistinguishable from the ADA framework."); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (explaining that a claim under the Rehabilitation Act is "functionally identical" to one under the ADA).

**A.      Exhaustion**

Defendants first argue that Plaintiff failed to exhaust his remedies.  (Mot. [17] at 4–6.)  In order to bring a retaliation claim in federal court, a plaintiff must first exhaust his remedies by filing

an administrative complaint.[3]  *See Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (ADA); *see also* 775 ILCS 5/7A-102(A) (IHRA).  A plaintiff can only bring claims in federal court that are "like or reasonably related to the allegations of the charge [filed with the EEOC] and growing out of such allegations."  *See Huri v. Off. of the Chief Judge of the Cir. Ct.*, 804 F.3d 826, 831 (7th Cir. 2015).  The charge "must, at a minimum, describe the same conduct and implicate the same individuals."  *See Hamzah v. Woodman's Food Mkt., Inc.*, 693 F. App'x 455, 458 (7th Cir. 2017) (quoting *Huri*, 804 F.3d at 831–32).  This requirement serves two purposes: it gives "the employer some warning of the conduct about which the plaintiff is aggrieved, and it affords the [parties] an opportunity to attempt conciliation without resort to the courts."  *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1005–06 (7th Cir. 2019) (emphasis added) (quoting *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

Defendants argue that retaliation was not listed in Plaintiff's EEOC charge, foreclosing his ability to bring this suit.  (Mot. [17] at 4–6.)  The court disagrees.  The charge of discrimination that Plaintiff presented to the EEOC and the Illinois Department of Human Rights includes the following factual narrative:

> Respondent was aware of my disability.  During my employment, I was disciplined. I requested a reasonable accommodation, which was granted for years. Thereafter, Respondent denied my accommodation. Subsequently, on or about April 17, 2025, I was constructively discharged.  I believe I was discriminated against because of my disability*, and in retaliation for engaging in protected activity*, in violation of the Americans with Disabilities Act of 1990.

(EEOC Charge [17-1] at 2–3 (emphasis added).)  This charge states that Plaintiff believed he suffered adverse action "in retaliation for" his protected activity, and that he was constructively discharged following the denial of his accommodation.  While it is true that this narrative is

---

[3]    The case law from the Seventh Circuit is not entirely clear on whether the Rehabilitation Act includes an exhaustion requirement.  *Compare Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770 (7th Cir. 2013) (holding that employees are not required to exhaust remedies prior to bringing a Rehabilitation Act claim)' *with Swain v. Wormuth*, 41 F.4th 892, 896 n.2 (7th Cir. 2022) (noting this inconsistency, and commenting that the Rehabilitation Act "likely" includes an exhaustion requirement).  If the Act does impose such a requirement, the court finds it satisfied in this case.

somewhat lacking in detail, it is enough to avoid dismissal at this early stage, especially given that the charge was drafted without the assistance of counsel. *See Hottenroth v. Vill. of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004) ("[B]ecause EEOC complaints are most often compiled without the assistance of counsel, we afford plaintiffs considerable leeway and ask only whether a claim set forth in the complaint is 'like or reasonably related to the allegations of the charge and growing out of such allegation.'"); *cf. Slaughter v. Cnty. of Kendall*, No. 12-CV-9091, 2014 WL 12791026, at *2 (N.D. Ill. May 8, 2014) (granting summary judgment on exhaustion defense in case where the plaintiff "did not check the box for retaliation in [] her charge," and "did not use the word 'retaliation' in the narrative in her charge").

Defendants also argue that because the charge lists as "[d]ate(s) discrimination took place" as "Earliest: 04/17/2025" and "Latest: 04/17/2025," he is precluded from bring a lawsuit premised on any adverse actions that did not occur on April 17 (the date of his termination). (Mot. [17] at 3.) The court disagrees. Plaintiff's EEOC charge references other adverse employment actions, including discipline and being denied reasonable accommodations, that clearly took place prior to his resignation on April 17, 2025. The charge, construed as a whole, provides adequate context to put Defendants on notice of the allegedly retaliatory conduct of which Plaintiff complains. Likewise, the prior retaliation alleged in the complaint would "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge," considering their similarity and the broader context. *Chaidez*, 937 F.3d at 1004. Plaintiff's choice of date may have been inartful, but this minor technical defect by a pro se litigant is not a basis for dismissal of his claim. *See Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 398, 402 (7th Cir. 2019) (reversing district court's grant of summary judgment, and overlooking minor defect in EEOC filing where the purpose of exhaustion was still served); *see also Huri*, 804 F.3d at 831 ("Courts review the scope of an EEOC charge liberally.").

7

### B.        Retaliation

The court turns to the merits of Plaintiff's retaliation claim. To state a claim of retaliation, a plaintiff must allege facts supporting a plausible inference that (1) he engaged in protected activity; (2) suffered an adverse employment action; and (3) there is a causal relationship between the two. *See* 42 U.S.C. § 12203(a); *Guzman v. Brown Cnty.*, 884 F.3d 633, 642 (7th Cir. 2018); *Rowlands v. UPS*, 901 F.3d 792, 801 (7th Cir. 2018). An "adverse employment action" means an action "that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Levis v. Ill. Cent. RR Co.*, 39 F.4th 903, 911–12 (7th Cir. 2022) (quoting *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016)).

Defendants contend that Plaintiff "fails to allege a causal connection because the alleged retaliation precedes his alleged protect[ed] activity." (Reply [22] at 3.) Specifically, they claim that Plaintiff did not engage in any protected activity prior to being placed on leave on October 3, 2024, and that all protected activity occurred after he was "already removed from his position." (*Id.*) Defendants are correct that Plaintiff has not alleged that his initial placement on involuntary unpaid leave was a product of retaliation, because he has not alleged that he engaged in any protected activity in the months (or even years) prior. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (explaining that a protected activity "must be specifically identified" in a complaint). But Plaintiff does allege that he engaged in protected activity and suffered adverse actions *after* being placed on leave: he claims that he engaged in self-advocacy and complained of disability discrimination while on leave, and that Defendants (allegedly in response) kept him on unpaid leave, which ultimately culminated in his resignation. (Opp'n [21] at 5–7.) These allegations support a plausible inference that his time on unpaid leave was extended in retaliation for his protected activity. That is sufficient to advance at this early stage. For the purposes of retaliation, an adverse employment act is one that could "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 70–72 (2006) (affirming jury verdict that a "37-day suspension without pay" qualified

8

as an adverse action); *see also Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 913–14 (7th Cir. 2022) ("It is well-established that unpaid suspensions can constitute materially adverse actions for retaliation claims."). Prolonging the time that an employee spends on unpaid leave can certainly meet that bar, even if there were valid reasons for the initial placement.[4] *See Lesiv*, 39 F.4th at 914 ("[T]o reiterate, all unpaid suspensions—regardless of the length—could constitute adverse employment actions.") Whether Plaintiff will be able to prove that retaliation was the reason he was kept on unpaid leave is a question best left for summary judgment.

## CONCLUSION

Defendants' motion to dismiss [17] is granted in part. As the court explained on the record on April 16, 2026, Counts VII (negligence) and VIII (breach of contract) are dismissed. Defendants do not challenge Plaintiff's discrimination claims (Counts I, III, and V). For the reasons stated above, the court declines to dismiss his retaliation claims (Counts II, IV, and VI). Defendants concede that Cook County will indemnify them against any amounts awarded to Plaintiff. Defendants are directed to answer Counts I through VI of Plaintiff's First Amended Complaint by July 23, 2026. Date for submission of a joint status report is extended to August 3, 2026.

ENTER:

Dated: July 10, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

---

[4] These facts might also support a claim of constructive discharge, which is available when "'working conditions [became] so intolerable that a reasonable person would have felt compelled to resign.'" *See Kinney v. St. Mary's Health, Inc.*, 76 F.4th 635, 648 (7th Cir. 2023). It is difficult to imagine any reasonable person remaining employed at a job where they have no tasks and are not provided with any compensation.